UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ASTRA ASSOCIATES, INC.,
dba Mid-West Instruments,
a Michigan corporation,                                    Case No. _____

      Plaintiff,

v.

SIJORA ENTERPRISES, LLC,
dba Acugauge,
a Florida limited liability company,

      Defendant.

_____

# COMPLAINT AND JURY DEMAND

Plaintiff, Astra Associates, Inc., dba Mid-West Instruments, by its counsel, Dykema Gossett, PLLC, state as follows, for its complaint against Defendant Sijora Enterprises, LLC, dba Acugauge:

## JURISDICTION AND VENUE

1.    This is an action for trademark infringement and counterfeiting, under the Lanham Trademark Act of 1946, as amended ("Lanham Act"), 15 U.S.C. § 1114, false designation of origin and false and/or misleading description and representation of fact, under the Lanham Act, 15 U.S.C. §1125(a); injurious

falsehood under Michigan common law; dilution and tarnishment under Michigan common law; and unfair competition under Michigan common law.

2. This Court has jurisdiction pursuant to 15 U.S.C. §1121 and 28 U.S.C. §§1331, 1338 and 1367.

3. Venue and personal jurisdiction over the Defendant is appropriate in this judicial district pursuant to 28 U.S.C. §1391, as a substantial portion of the events giving rise to the claims herein arose, and/or a substantial part of the property that is the subject of this action is situated, in this judicial district. Personal jurisdiction exists over Defendant in this judicial district pursuant to M.C.L. §600.735, as Defendant transacts business in Michigan, and is doing and/or causing acts to be done and consequences to occur in Michigan, and the claims set forth herein arise out of such activities of Defendant.

## PARTIES

4. Plaintiff, Astra Associates, Inc., dba Mid-West Instruments ("Mid-West"), is a Michigan corporation, with a principal place of business at 6500 Dobry Drive, Sterling Heights, Michigan.

5. Defendant, Sijora Enterprises, LLC, dba Acugauge ("Acugauge"), is a Florida limited liability company with an address of 4111 NW 88th Avenue, Coral Gables, Florida.

## **FACTS COMMON TO ALL CLAIMS**

6.  Established over half a century ago, Mid-West designs, manufactures, assembles and tests differential pressure gauges in a state of the art manufacturing facility in this judicial district.  Differential pressure gauges are used in the movement of liquids and gases.  Among these precision instruments Mid-West designs and manufactures are backflow prevention test kits.  Backflow prevention assemblies are used to protect potable water supplies from contamination or pollution due to backflow from cross connections with other, non-potable, water systems.  Many states and local municipalities require annual testing of backflow prevention assemblies.  Mid-West's backflow prevention test kits are used to conduct such testing.  As such, these instruments are critical to protection of drinking water supplies, and thus the public health and safety.  Mid-West's backflow prevention test kits are the result of over forty (40) years of input from backflow technicians. They are on the list of Acceptable Gauges of both the Foundation for Cross-Connection Control & Hydraulic Research – University of Southern California (FCCC & HR-USC) and the American Water Works Association California – Nevada Section (CA-NV AWWA).  Mid-West's backflow prevention test kits are, and for decades have been, the benchmark of the industry.

7. For well over a decade and long prior to the acts of Defendant Acugauge complained of herein, Mid-West has used the arbitrary and distinctive designation "**845**" to identify a line of its backflow prevention test kits, and to distinguish those products from the backflow prevention test kits of others. Since its first use of **845**, Mid-West continuously has used that designation – specifically, the marks **845-2**, **845-3**, and **845-5** (hereafter sometimes collectively referred to as Mid-West's "**845** marks") – in connection with the advertisement, promotion, offering for sale, and sale of backflow prevention test kits, in commerce throughout the United States, including this judicial district, and indeed, throughout the world. As a result of Mid-West's advertising, promotion and sale of its backflow prevention test kits under the distinctive **845** marks, as well as the superior quality and recognition in the industry of Mid-West's **845** line of backflow prevention test kits, each of the **845** marks has become well known in the backflow prevention/potable water industry. As such, there is enormous goodwill associated with Mid-West's **845** marks, and they are of inestimable value to the company.

8. Mid-West is the owner of the following U.S. Trademark Registrations for its **845** marks for backflow test kits, each of which issued November 25, 2014: Registration No. 4,643,459, for **845-5**; Registration No. 4,643,460, for **845-2**; and Registration No. 4,643,461, for **845-3**. Each of these registrations is valid and

4

subsisting and operates as *prima facie* evidence of Mid-West's ownership of these **845** marks, the validity thereof, and Mid-West's exclusive right to use same throughout the United States in connection with backflow prevention test kits. Copies of these registrations are attached as Exhibits A, B, and C.

9. In 2003, Mid-West registered the domain name backflowtestkits.com. Since that time, Mid-West has advertised and promoted its backflow prevention test kits bearing the **845** marks on the www.backflowtestkits.com website. In advertising for its backflow prevention kits sold under the **845** marks, Mid-West consistently has touted that such are the product of "Over 30 [now 40] years of input from backflow technicians" as well as the fact that the products are manufactured and assembled in the United States. Mid-West also prominently advertises that its backflow prevention kits sold under the **845** marks are "Capable of performing test procedures including those recommended by ABPA, ASSE, AWWA, CSA, FCCC & HR-USC, NEWWA and UF-TREEO."

10. In about June of 2012, Mid-West learned that Defendant Acugauge was advertising and offering for sale backflow prevention kits, under the designations "845-2", "845-3", and "845-5," at the website www.backflow-test-kit.com. This website also purported to advertise and sell Mid-West backflow prevention test kits sold under its **845** marks. Moreover, the website contained extensive text and photographs copied verbatim from Mid-West's advertising and

5

fact sheets. At no time did Defendant have authorization to use Mid-West's copyrighted text and/or photos, **845** marks, and/or to advertise, promote or offer for sale, Mid-West's products. The Acugauge website also contained numerous false statements and misrepresentations about the Acugauge products, including that they are "Acceptable by both USC and AWWA."

11. Plaintiff Mid-West sent Acugauge a letter notifying Defendant of Plaintiff's trademark rights in the **845** marks, and demanding that Acugauge cease use of same and that it remove the copied text and photographs of Mid-West from the Acugauge web site. Although Acugauge removed the extensive text copied from Mid-West's advertising and fact sheets from the www.backflow-test-kit.com website, Acugauge continued to use the designations "845-2," "845-3," and "845-5" in connection with the backflow prevention test kits it was offering for sale on that website, from a link identified on the website as "Mid-West® Backflow Test Kits". Accordingly, Mid-West sent a further demand letter to Defendant Acugauge in July of 2013, and when the unauthorized use of Mid-West's **845** marks still did not cease, sent another demand letter in December of 2014. Nevertheless, and despite clear notice, such unauthorized use continues, and Acugauge has never responded to any of the letters sent to it on Plaintiff's behalf.

12. In addition to continued use of each of Mid-West's **845** marks in connection with the backflow prevention test kits advertised and sold by

6

Defendant, Acugauge now advertises and promotes such products under the heading (and internet page link) "Mid-West/Acugauge Backflow Test Kits, with the representations, "Over 30 years of input from backflow technicians" and with respect to the products identified with the "845-5" designation, as "Acceptable by both USC and AWWA in all 50 states" and "Approved in all 50 states and Canada." On information and belief, each of these representations is false and/or misleading, in addition to being copied from Mid-West's own marketing materials. The www.backflow-test-kit.com website also identifies Defendant Acugauge as an "original manufacturer . . . of backflow preventer test kits" which, on information and belief, misleads actual and potential customers into believing that Acugauge manufactures parts of the kits, when in fact, on information and belief, at most, Acugauge only assembles such kits from the parts manufactured by others. Acugauge further falsely describes and/or misrepresents Mid-West backflow prevention test kits sold under its **845** marks, and/or the characteristics and/or qualities of same, including in its "compare to Mid-West® 845-2 [845-3/845-5]" web page, a purported list of "Product Features/Benefits" which Defendant implies or misrepresents that its products have and Mid-West's products do not have, when the precise opposite is true.

13. There has been actual confusion occasioned by Acugauge's unauthorized use of Mid-West's **845** marks, including complaints regarding the

7

quality of such products of Acugauge mistakenly believed to have come from Plaintiff Mid-West.

14. On information and belief, the backflow prevention test kits sold by Acugauge under Plaintiff's **845** marks are of inferior quality.

## COUNT I

**(Trademark Infringement and Counterfeiting under the Lanham Act)**

15. Plaintiff repeats and realleges ¶¶ 1 through 14, above, and hereby incorporates same by reference as if fully set forth herein.

16. Defendant has used a reproduction, counterfeit, copy and colorable imitation of Plaintiff's federally registered **845-2®**, **845-3®** and **845-5®** marks, as aforesaid, in commerce, and/or has applied each of said registered marks to advertising intended to be used in commerce, in connection with the sale, offering for sale, distribution, or advertising of goods and/or services, which use is likely to cause confusion, or to cause mistake, or to deceive, with respect to Plaintiff Mid-West and/or the backflow prevention test kits advertised, marketed, offered, and/or sold by or on behalf of Plaintiff.

17. Defendant's use of Plaintiff's registered **845-2®**, **845-3®** and **845-5®** marks is without the consent of Plaintiff.

18. By reason of its acts as aforesaid, Defendant Acugauge has committed trademark infringement and counterfeiting under 15 U.S.C. §1114.

19. At all times relevant hereto, Defendant had actual knowledge of Plaintiff's registered **845-2®**, **845-3®** and **845-5®** marks and Plaintiff's exclusive rights in those marks, and Defendant's infringement and counterfeiting is knowing, willful and/or with intent to cause confusion, mistake, and/or to deceive, and further, Defendant used the counterfeit 845-2, 845-3 and 845-5 designations in connection with the offer for sale and sale of the Acugauge backflow prevention test kits knowing them to be counterfeit marks.

20. Plaintiff Mid-West has suffered and will continue to suffer irreparable harm and damage as a result of Defendant's willful trademark infringement and counterfeiting, in an amount not yet ascertainable, entitling Plaintiff to injunctive relief, to recover its actual damages, including Defendants' profits, and other relief under 15 U.S.C. §§ 1116 and 1117, and/or should Plaintiff elect, statutory damages of up to $2 million ($2,000,000) per each of the **845-2®**, **845-3®** and **845-5®** marks.

21. Defendant's acts, as aforesaid, render this an exceptional case and entitle Plaintiff Mid-West to recover three times the amount of Plaintiff's actual damages including Defendant's profits, as well as attorneys' fees as provided for under 15 U.S.C. §1117.

22. Defendant will continue in its trademark infringement and counterfeiting, unless enjoined by this Court.

9

## COUNT II

**(False Designation of Origin and False and/or Misleading Description and Representation of Fact, under the Lanham Act)**

23. Plaintiff repeats and realleges ¶¶ 1 through 22, above, and hereby incorporates same by reference as if fully set forth herein.

24. Defendant has used in commerce in connection with Defendant's goods and in commercial advertising, Plaintiff's **845-2®**, **845-3®** and **845-5®** marks in a manner which falsely designates the origin of Defendant's products, and/or which falsely and/or misleadingly represents or suggests that Defendant's goods have characteristics and/or qualities which they do not have.

25. The use by Defendant in commerce and commercial advertising, as aforesaid, of false designations of origin, and false and/or misleading descriptions and/or representations, is likely to cause confusion or mistake, or to deceive, as to the affiliation, connection and/or association of Defendant with Plaintiff, and/or as to the origin, sponsorship and/or approval of the goods and/or commercial activities of Defendant.

26. Defendant has used in commercial advertising or promotion, false and/or misleading descriptions and/or representations of fact which misrepresent the nature, characteristics and/or qualities of Defendant's products and/or commercial activities, including, falsely stating/representing that its backflow

prevention test kits are the result of "Over 30 years of input from backflow technicians" and/or are "Acceptable by both USC and AWWA in all 50 states" and/or "Approved in all 50 states and Canada," and that Defendant is an "original manufacturer . . . of backflow preventer test kits."

27. By reason of its acts as aforesaid, Defendant has committed false designation of origin, and false or misleading description and/or representations, under 15 U.S.C. §1125(a).

28. Plaintiff Mid-West has suffered and will continue to suffer irreparable harm and damage as a result of Defendant's false designation of origin, and false or misleading description and/or representation, in an amount not yet ascertainable, entitling Plaintiff to injunctive relief, to recover its actual damages, including Defendant's profits, and other relief under 15 U.S.C. §§1116 and 1117.

29. Defendant's acts as aforesaid, render this an exceptional case and entitle Plaintiff Mid-West to recover three times the amount of Plaintiff's actual damages including Defendant's profits, as well as attorneys' fees as provided for under 15 U.S.C. §1117.

30. Defendant will continue in its false designation of origin and false or misleading description and/or representation, unless enjoined by this Court.

## COUNT III

### (Injurious Falsehood under Michigan Common Law)

31. Plaintiff repeats and realleges ¶¶ 1 through 30 above, and hereby incorporates same by reference as if fully set forth herein.

32. Defendant's false statements and misrepresentations as aforesaid, ¶12, above, are malicious and made with the intent by Defendant Acugauge to harm Plaintiff Mid-West, and/or Plaintiff's business.

33. Plaintiff Mid-West repeatedly has requested that Defendant cease publishing the aforesaid false statements and misrepresentations but Defendant refuses to do so.

34. By reason of its acts as aforesaid, Defendant has committed injurious falsehood under Michigan common law.

35. Plaintiff Mid-West has suffered and will continue to suffer irreparable harm and damage as a result of Defendant's injurious falsehood, in an amount not yet ascertainable, entitling Plaintiff to injunctive relief, to recover its actual damages, exemplary and/or punitive damages under Michigan common law.

36. Defendant will continue in its injurious falsehood(s), unless enjoined by this Court.

## COUNT IV

### (Dilution and Tarnishment under Michigan Common Law)

37. Plaintiff repeats and realleges ¶¶ 1 through 36, above, and hereby incorporates same by reference as if fully set forth herein.

38. Defendant's unauthorized and counterfeit use of Plaintiff's **845-2®**, **845-3®** and **845-5®** marks, as aforesaid, on directly competitive products, but which are of inferior quality, which unauthorized and counterfeit use is likely to cause, and has caused, confusion, has and will diminish the distinctive quality of, and/or the goodwill in, Plaintiff's **845-2®**, **845-3®** and **845-5®** marks.

39. By reason of its acts as aforesaid, Defendant has committed dilution and tarnishment of Plaintiff's **845-2®**, **845-3®** and **845-5®** marks under Michigan common law.

40. Plaintiff Mid-West has suffered and will continue to suffer irreparable harm and damage as a result of Defendant's dilution and tarnishment of Plaintiff's **845** marks, in an amount not yet ascertainable, entitling Plaintiff to injunctive relief, and to recover its actual damages, including Defendant's profits, and other relief, under Michigan common law.

41. Defendant will continue in its dilution and tarnishment, unless enjoined by this Court.

## COUNT V

## (Unfair Competition under Michigan Common Law)

42. Plaintiff repeats and realleges ¶¶ 1 through 41, above, and hereby incorporates same by reference as if fully set forth herein.

43. By reason of its trademark infringement and counterfeiting, false designation of origin and false and/or misleading description and representation of fact, injurious falsehood, and dilution and tarnishment, as aforesaid, Defendant has committed unfair competition under Michigan common law.

44. Plaintiff Mid-West has suffered and will continue to suffer irreparable harm and damage as a result of Defendant's unfair competition, in an amount not yet ascertainable, entitling Plaintiff to injunctive relief, and to recover its actual damages, including Defendant's profits, and other relief, under Michigan common law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Astra Associates, Inc., d/b/a Mid-West Instruments, prays that the Court grant it the following relief:

A. A Judgment against Defendant Sijora Enterprises, LLC, d/b/a Acugauge, on each of Plaintiff's claims for relief, for: (i) trademark infringement and counterfeiting, in violation of 15 U.S.C. §1114; (ii) false designation of origin and false and/or misleading description and representation of fact, in violation of

14

15 U.S.C. §1125(a); (iii) injurious falsehood in violation of Plaintiff's rights under Michigan common law; (iv) dilution and tarnishment in violation of Plaintiff's rights under Michigan common law; and (v) unfair competition, in violation of Plaintiff's rights under Michigan common law.

B.   A permanent injunction enjoining Defendant, and each of its managers, members, agents, servants, employees, and representatives, and all those acting in concert or participation with Defendant who receive actual notice, from:

(i)   using in any manner any of Plaintiff's **845-2®**, **845-3®** and **845-5®** marks, or any counterfeit of, colorable imitation or simulation thereof, in connection with the importation, advertising, promotion, distribution, offering for sale, and/or sale, of any backflow prevention test kits or product in the United States, other than to identify the genuine, authorized backflow prevention test kits of Plaintiff; and

(ii)   publishing on the www.backflow-test-kit.com website and/or on any other advertising or promotional material, false statements and/or misrepresentation as to the nature, characteristics and/or qualities of the backflow prevention test kits of Plaintiff and/or Defendant, including, but not limited to, claims that Defendant's products are the result "Over 30 years of input from backflow technicians" and/or are "Capable of

performing all known backflow test procedures including those recommended by ASSE, AWWA, CSA, FCCC and HR-USC 10th Edition, and NEWWA," and/or that Defendant is an "original manufacturer" of Defendant's backflow preventer test kits.

C.  An order that any and all backflow prevention test kits, and any packaging, labels, signs, prints, advertisements, brochures, and any other objects or materials, bearing any of the 845-2, 845-3 and/or 845-5 marks, and all plates, molds, matrices and other means of making same, be delivered to Plaintiff for destruction.

D.  A Judgment awarding Plaintiff the damages caused by the Defendant's infringement, counterfeiting, false designation of origin and false and/or misleading description and representation of fact, dilution and tarnishment, injurious falsehood, and unfair competition, including all profits realized by reason of the Defendant's unlawful acts; and/or if Plaintiff elects with respect to Defendant's counterfeiting, statutory damages of $2,000,000 per counterfeit mark.

E.  A Judgment awarding Plaintiff treble the amount of its actual damages (including Defendant's profits).

F.  An award of costs and expenses of bringing and maintaining this suit, including attorneys' fees.

G.  Such other and further relief as the Court deems appropriate.

16

## **JURY DEMAND**

Plaintiff Astra Associates, Inc., d/b/a Mid-West Instruments, by its counsel, Dykema Gossett, PLLC, hereby demands a trial by jury of all claims.

                                      Respectfully submitted,

                                      DYKEMA GOSSETT PLLC

By: /s/ Patrick F. Hickey
     Patrick F. Hickey (P36648)
     Attorneys for Plaintiff Astra Associates,
     Inc., dba Mid-West Instruments,
     Dykema Gossett PLLC
     400 Renaissance Center
     Detroit, MI 48243
     Telephone: (313) 568-6800
     phickey@dykema.com

Dated:       November 25, 2015

Of Counsel:
Marsha G. Gentner
Dykema Gossett PLLC
1300 I Street, NW, Suite 300 West
Washington, DC 20005
(202) 906-8611
mgentner@dykema.com

4812-0320-5931.2
ID\GENTNER, MARSHA - 060959\000025

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243