UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ASTRA ASSOCIATES, INC., dba Mid-West Instruments, | Case No. 15-14148 |
| Plaintiff, | Honorable Laurie J. Michelson |
| v. | Magistrate Judge Elizabeth A. Stafford |
| SIJORA ENTERPRISES, LLC, dba Acugauge, | |
| Defendant. | |

**OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR DEFAULT JUDGMENT [9]**

Plaintiff Astra Associates, Inc., doing business as Mid-West Instruments ("Mid-West"), sells "backflow prevention test kits," under the trademarks "845-2," "845-3," and "845-5" (the "845 marks"). According to Mid-West, Defendant Sijora Enterprises, LLC, doing business as "Acugauge," sells inferior products using those same marks, and through Acugauge's website, implies that some of these inferior products are Mid-West's products. Mid-West sued Acugauge for trademark infringement, unfair competition, and under state law. When Acugauge failed to appear or answer despite service of process, the Clerk entered default. Mid-West now seeks a default judgment, permanently enjoining Acugauge from misusing the 845 marks. For the reasons discussed, the Court will grant Mid-West's motion.

**I.**

**A.**

Mid-West's Complaint includes the following allegations. Mid-West manufactures backflow prevention test kits, which are used to test backflow prevention assemblies that protect

water supplies from contamination. (R. 1, PID 3 ¶ 6.) Mid-West claims that its backflow prevention test kits are "the benchmark of the industry." (*Id.*)

For over a decade, Mid-West has used the designation "845" to identify a line of its backflow prevention test kits when advertising, promoting, and selling them worldwide. (R. 1, PID 4 ¶ 7.) Three specific marks are at issue here: "845-2," "845-3," and "845-5." (*Id.*) Mid-West alleges that each of the 845 marks is "arbitrary and distinctive" and that the marks have become "well known in the backflow prevention/potable water industry," giving Mid-West "inestimable value" due to the associated "enormous goodwill." (*Id.*)

Since 2003, Mid-West has promoted its test kits bearing the 845 marks on the website www.backflowtestkits.com, advertising that the kits come from "[o]ver 30 [now 40] years of input from backflow technicians," are made and sold in the United States, and are "Capable of performing test procedures including those recommended by ABPA, ASSE, AWWA, CSA, FCCC & HR-USC, NEWWA and UF-TREEO." (R. 1, PID 5 ¶ 9 (first alteration in original).)

In June 2012, Mid-West learned that Acugauge was advertising and selling backflow prevention test kits using the same 845 marks—"845-2," "845-3," and "845-5"—at another website, www.backflow-test-kit.com. (R. 1, PID 5 ¶ 10.) Acugauge's website also "purported" to sell Mid-West test kits with the 845 marks, though the Complaint does not clarify whether Acugauge was actually selling Mid-West test kits or simply selling counterfeit kits under Mid-West's brand. (*Id.*) The website also copied text and photographs from Mid-West's advertising and fact sheets. (*Id.*) None of this was authorized. (*Id.*) Finally, the website also made false statements about the Acugauge products, including that they are "Acceptable by both USC and AWWA." (R. 1, PID 5–6 ¶ 10.)

2

More than two years later, on November 25, 2014, Mid-West was issued the following United States Trademark Registrations for its 845 marks for backflow prevention test kits: Registration No. 4,643,459 (for 845-5); Registration No. 4,643,460 (for 845-2); and Registration No. 4,643,461 (for 845-3). (R. 1, PID 4–5 ¶ 8.)

At some point (the Complaint does not say when), Mid-West sent Acugauge a cease and desist letter. (R. 1, PID 6 ¶ 11.) In response, Acugauge removed from its website the text copied from Mid-West's materials but continued to use the 845 marks, offering backflow prevention test kits for sale from a link on the website identified as "Mid-West® Backflow Test Kits." (*Id.*) Again, the Complaint does not say whether Acugauge was actually selling Mid-West kits or counterfeit ones. Mid-West sent other demand letters in July 2013 and December 2014, but the unauthorized use of the 845 marks continued, and Acugauge has not responded. (*Id.*)

Acugauge's website also now promotes products with the 845 marks through a link identified as "Mid-West/Acugauge Backflow Test Kits," representing that the products come from "[o]ver 30 years of input from backflow technicians" and that the products with the 845-5 designation are "Acceptable by both USC and AWWA in all 50 states" and are "Approved in all 50 states and Canada." (R. 1, PID 7 ¶ 12.) The website also misleadingly identifies Acugauge as an "original manufacturer" of backflow prevention test kits even though "at most, Acugauge only assembles such kits from the parts manufactured by others." (*Id.*) Finally, the website misrepresents features that Acugauge's products have compared to Mid-West's, including false assertions that its products have certain features that Mid-West's products do not have. (*Id.*)

This has all caused actual confusion—including customer complaints to Mid-West about the quality of Acugauge products that were mistakenly believed to have come from Mid-West. (R. 1, PID 7 ¶ 13.)

### B.

Mid-West filed this action against Acugauge on November 25, 2015. (R. 1.) The Complaint asserts five counts: (1) trademark infringement and counterfeiting under the Lanham Act; (2) false designation and false or misleading description and representation of fact under the Lanham Act; (3) injurious falsehood under Michigan common law; (4) dilution and tarnishment under Michigan common law; and (5) unfair competition under Michigan common law. Mid-West served Acugauge's registered agent on December 24, 2015, but no appearance or response followed. (R. 4.) At Mid-West's request, the clerk entered and served default on February 2, 2016. (R. 7, R. 8.) Mid-West moved for default judgment under Federal Rule of Civil Procedure 55(b)(2) on August 2, 2016. (R. 9.) Mid-West seeks a permanent injunction and attorneys' fees. (R. 9, PID 52.)

### II.

As a threshold issue, in order to render a valid judgment, a court must have jurisdiction over the subject matter and the parties, and must act in a manner consistent with due process. *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 108 (6th Cir. 1995).

The focus of Mid-West's motion for default judgment appears to be solely its Lanham Act claims. This Court has subject-matter jurisdiction over those claims under 28 U.S.C. §§ 1331 and 1338. As Mid-West does not specifically address its other claims—and seeks only a permanent injunction under the Lanham Act—the Court will dismiss its state-law claims.

As for due process considerations, the Court notes that while a defendant may waive a personal jurisdiction challenge or chose to contest it later in the proceedings or in a collateral proceeding, courts have nonetheless *sua sponte* addressed the issue prior to entering a default judgment. *See*, *e.g.*, *Amica Mut. Ins. Co. v. Epplett*, No. 15-10442, 2015 WL 5439946, at *3

4

(E.D. Mich. Sept. 15, 2015) (citing cases); *see also Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986) (per curiam). Based on this practice, the Court asked Mid-West to brief whether the Court has personal jurisdiction over Acugauge (R. 10). Mid-West's response (R. 12) has convinced the Court that at least a *prima facie* case can be made that personal jurisdiction is proper over Acugauge.

"When a federal court's subject-matter jurisdiction is based on a federal question, the court's exercise of personal jurisdiction must be both authorized by the forum State's long-arm statute and in accordance with the Due Process Clause of the Fourteenth Amendment." *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016).

To start, the Court finds that personal jurisdiction over Acugauge is proper under Michigan's long-arm statute. "There is no Michigan statute that addresses personal jurisdiction over limited liability companies, such as the defendant in this case. However, the personal jurisdiction rules governing corporations generally have been applied to limited liability companies as well." *Magna Powertrain De Mexico S.A. De C.V. v. Momentive Performance Materials USA LLC*, 192 F. Supp. 3d 824, 828 (E.D. Mich. 2016). The Michigan long-arm statute for corporations, Mich. Comp. Laws *See* § 600.715, extends personal jurisdiction over a non-resident corporation for claims "arising out of the act or acts which create any of the following relationships," including "[t]he transaction of any business within the state." The Michigan Supreme Court interprets "any" under the state's long-arm statute to mean "just what it says"—even the "slightest" business. *Sifers v. Horen*, 188 N.W.2d 623, 624 (Mich. 1971). That is easily met here. Mid-West's Complaint alleges that Acugauge transacts business in Michigan. (R. 1, PID 2 ¶ 2.) Acugauge's website implicitly confirms this, representing that "on any given day we calibrate and ship backflow test kits to *every State* in the country." (R. 12, PID 110

5

(emphasis added).) At around the time of the Complaint, a Mid-West employee ordered an infringing product from Acugauge's website, confirming that the website ships to Michigan. (R. 9-8, R. 12-2.) Furthermore, "[t]he 'arising out of' requirement of § 600.715 is satisfied because the alleged economic harm and trademark infringement that form the basis of [Mid-West's] suit were directly related to [Acugauge's] transaction of business in Michigan." *See Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002).

Moving to the due process inquiry, "[t]he relevant question . . . is whether [Acugauge] possessed such 'minimum contacts' with the forum state that exercising jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" *SFS Check, LLC v. First Bank of Delaware*, 774 F.3d 351, 356 (6th Cir. 2014) (citation omitted). Such "minimum contacts" exist if (1) Acugauge "purposefully avail[ed] [it]self of the privilege of acting in [Michigan] or caus[ed] a consequence in [Michigan]," (2) the cause of action arises from Acugauge's activities in Michigan, and (3) "the acts of [Acugauge] or consequences caused by [Acugauge] . . . have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Id.*

Starting with the first factor, "[a] defendant purposefully avails itself of the privilege of acting in a state through its website if the website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Neogen*, 282 F.3d at 890. Acugauge's website meets that degree of interaction. It allows customers to place online orders to have products with the infringing marks shipped to destinations including Michigan (*see* R. 12-3). *See Chanel, Inc. v. Huang Cong,* No. 10-2086, 2011 WL 6180029, at *4 (W.D. Tenn. Dec. 8, 2011) ("Where, through a website, a defendant sells products and services to customers in the forum state, the defendant has purposefully availed itself of the privilege of acting in the

forum state, even if the customers initiate the sales by placing orders through the website."). The website also holds itself out as welcoming Michigan business, stating that it ships products to "every" state on a "daily basis." *See Neogen*, 282 F.3d at 891 (6th Cir. 2002) (finding purposeful availment where a website "holds itself out as welcoming Michigan business" by stating it would "do a genetic newborn screening test for any parent in any state"). This suggests that Acugauge routinely does business with Michigan residents through its website.

Thus, for the purpose of this motion, the Court finds that Acugauge purposefully availed itself of the privilege of acting in Michigan by specifically intending interaction with Michigan residents. If for some reason the claims on its website are false—and Acugauge does not really ship backflow prevention test kits to Michigan—Acugauge may come to this Court to explain itself.

The second factor is met here as well: the cause of action arises from Acugauge's activities in Michigan. The standard under this prong is "lenient," and "the cause of action need not 'formally' arise from defendant's contacts." *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 552 (6th Cir. 2016) (citation omitted). "At a minimum, this factor is satisfied if 'the cause of action, of whatever type, ha[s] a substantial connection with the defendant's in-state activities." *Id.* (citation omitted). Here, it does. As one court has explained, "trademark infringement is essentially a tort, the effect of which is felt in the state where [a] Plaintiff is located. Therefore, to the extent that [a] Defendant has allegedly violated Plaintiff's federal trademarks, the cause of action arises in Michigan, where Plaintiff is located." *Mor-Dall Enterprises, Inc. v. Dark Horse Distillery, LLC*, 16 F. Supp. 3d 874, 882 (W.D. Mich. 2014).

The third factor is also met: the exercise of personal jurisdiction over Acugauge would be reasonable because of Acugauge's connection to Michigan. "An inference arises that the third

factor is satisfied if the first two requirements are met." *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002) (citation omitted). Even without that inference, the factors that guide the inquiry under this factor, *see id*, all support the exercise of personal jurisdiction: the burden to Acugauge is slim, as its Michigan business should have made it reasonably expect to be hailed to court here; Michigan has an interest in protecting its businesses like Mid-West; Mid-West has an interest in vindicating its trademark rights here in its home-state; and the Court can think of no overriding interests of other states.

Accordingly, the Court finds that Mid-West has established a *prima facie* case that the Court may exercise personal jurisdiction over Acugauge, so there is no jurisdictional barrier to entering a default judgment.

### III.

The Court now turns to Mid-West's claims. The Court accepts as true Mid-West's well pled allegations to determine whether they are "sufficient to state a claim and support a judgment of liability." *See Gen. Conference Corp. of Seventh-Day Adventists v. McGill*, 617 F.3d 402, 407 (6th Cir. 2010).

### A.

The Court finds that Mid-West has stated plausible Lanham Act claims. "A party proves trademark infringement by showing (1) that it owns a trademark, (2) that the infringer used the mark in commerce without authorization, and (3) that the use of the alleged infringing trademark 'is likely to cause confusion among consumers regarding the origin of the goods offered by the parties.'" *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 502 (6th Cir. 2013) (citation omitted); *see also Audi AG v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006) (noting that "only a 'likelihood of confusion' must be shown in order to obtain *equitable relief*" (emphasis in original)). Under the

Lanham Act, the Sixth Circuit "use[s] the same test to decide whether there has been trademark infringement, unfair competition, or false designation of origin: the likelihood of confusion between the two marks." *D'Amato*, 469 F.3d at 542.

Mid-West alleges that it owns the following valid United States Trademark Registrations for its 845 marks for backflow prevention test kits, all of which issued November 25, 2014: Registration No. 4,643,459 (for 845-5); Registration No. 4,643,460 (for 845-2); and Registration No. 4,643,461 (for 845-3). (R. 1, PID 4–5 ¶ 8.) Those registrations are all attached to its Complaint as well. (*See* R. 1-2, 1-3, 1-4.)

Mid-West also alleges in detail how Acugauge has used those marks without authorization. Specifically, Acugauge advertises and sells on its website its own backflow prevention test kits using Mid-West's marks, "845-2," "845-3," and "845-5." (R. 1, PID 5 ¶ 10.) The website also purports to sell Mid-West test kits with the 845 marks. (*Id.*) Furthermore, the website promotes products with the 845 marks through a link identified as "Mid-West/Acugauge Backflow Test Kits." (R. 1, PID 7 ¶ 12.) According to Mid-West, none of this was authorized—it sent Acugauge several letters asking it to stop infringing the 845 marks, but the unauthorized use continues. (R. 1, PID 6 ¶ 11.)

As for whether this has caused a likelihood of confusion, Courts consider the following factors: "(1) strength of plaintiff's mark; (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing of channels used; (6) degree of purchaser care; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion in selecting the mark." *D'Amato*, 469 F.3d at 542–43.

With several of these factors in mind, the Court finds that the Complaint plausibly alleges a likelihood of confusion due to Acugauge's conduct. *See Wynn Oil Co. v. Thomas*, 839 F.2d

9

1183, 1186 (6th Cir. 1988) ("[A] plaintiff need not show that all, or even most, of the factors listed are present in any particular case to be successful."); *Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.*, 730 F.3d 494, 509 (6th Cir. 2013) ("[T]his court has sometimes resolved the question of confusion by reference to only one or a few of these factors, without inquiring into the rest").

For one, the goods are related because they are "marketed and consumed such that buyers are likely to believe that the . . . [goods], similarly marked, come from the same source, or are somehow connected with or sponsored by a common company." *D'Amato*, 469 F.3d at 543. Acugauge has been advertising and selling backflow prevention test kits—similar to Mid-West's products and using the same marks—and attributing the products to Acugauge, Mid-West, or some combination of the two.

The marks at issue are also similar, if not identical. Mid-West alleges that Acugauge used the same three marks—845-2, 845-3, and 845-5—for which Mid-West owns trademarks. *See Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 283 (6th Cir. 1997) ( "Similarity of marks is a factor of considerable weight.").

Furthermore, Mid-West has alleged that actual confusion has ensued: consumers have complained to Mid-West about Acugauge's products, mistakenly believing the products to have come from Mid-West, (R. 1, PID 7–8 ¶ 13). *See id.* at 284 ("Evidence of actual confusion is undoubtedly the best evidence of likelihood of confusion.").

The marketing channels are the same: both Acugauge and Mid-West sell their back-flow prevention test kits online. *See D'Amato*, 469 F.3d at 544 ("[S]imultaneous use of the Internet as a marketing tool exacerbates the likelihood of confusion," given the fact that "entering a web site takes little effort—usually one click from a linked site or a search engine's list; thus, Web surfers

10

are more likely to be confused as to the ownership of a web site than traditional patrons of a brick-and-mortar store would be of a store's ownership."). And Acugauge's website—which has an address that bears a striking resemblance to Mid-West's website—has copied text and photographs from Mid-West's advertising and fact sheets, and has made false statements about the Acugauge products, including that they are "Acceptable by both USC and AWWA." (R. 1, PID 5–6 ¶ 10.)

Finally, the allegations support the inference that Acugauge intended to benefit from Mid-West's reputation in using the 845 marks. *See D'Amato*, 469 F.3d at 544 (noting under the seventh factor that "[t]he intent of defendants in adopting [their mark] is a critical factor, since if the mark was adopted with the intent of deriving benefit from the reputation of [the plaintiff], that fact alone may be sufficient to justify the inference that there is confusing similarity.").

In conclusion, accepting as true Mid-West's well-pled factual allegations, the Court finds that Mid-West has stated Lanham Act claims for trademark infringement and false designation of origin and false or misleading description and representation of fact.

## B.

Though Mid-West's Complaint seeks money damages, its motion for default judgment asks only for injunctive relief. Specifically, Mid-West asks for an order permanently enjoining the following:

> Defendant, and each of its managers, members, agents, servants, employees, and representatives, and all those acting in concert or participation with Defendant who receive actual notice, from:
>
> (i)      using in any manner any of Plaintiff's 845-2®, 845-3® and 845-5® marks, or any counterfeit of, colorable imitation or simulation thereof, in connection with the importation, advertising, promotion, distribution, offering for sale, and/or sale, of any backflow prevention test kits or product in the United States, other than to identify the genuine, authorized backflow prevention test kits of Plaintiff;

11

(ii)     publishing on the www.backflow-test-kit.com website and/or on any other advertising or promotional material, false statements and/or misrepresentations as to the nature, characteristics and/or qualities of the backflow prevention test kits of Plaintiff and/or Defendant, including, but not limited to, claims that Defendant's products are the result [of] "Over 30 years of input from backflow technicians" and/or are "Capable of performing all known backflow test procedures including those recommended by ASSE, AWWA, CSA, FCCC and HR-USC 10th Edition, and NEWWA,", that Defendant is an "original manufacturer" of Defendant's backflow preventer test kits, and/or that the factory producing the Mid-West backflow preventer test kits is "retooling" or otherwise unable to deliver product; and

(iii)    advertising and/or offering for sale any products purporting or represented to be Mid-West backflow preventer products, including but not limited to the Mid-West 845-2®, 845-3® and/or 845-5® backflow preventer test kits, "mid-west-stylebackflow-test-kits", and/or otherwise representing or implying that Defendant is an authorized dealer, seller or distributor of any of the Mid-West backflow preventer products and/or that such products may be purchased from Defendant online, via telephone order, and/or any other manner.

(R. 9-10, PID 97.) Mid-West also asks that the Court order "that any and all backflow prevention test kits, and any packaging, labels, signs, prints, advertisements, brochures, and any other objects or materials, bearing any of the 845-2, 845-3 and/or 845-5 marks, and all plates, molds, matrices and other means of making same, be delivered to Plaintiff [by Acugauge] for destruction within twenty days." (*Id.*, PID 97–98.)

The Lanham Act authorizes this Court to issue an injunction "to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office." 15 U.S.C. § 1116(a). "A plaintiff seeking a permanent injunction must demonstrate that it has suffered irreparable injury, there is no adequate remedy at law, 'that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted,' and that it is in the public's interest to issue the injunction." *D'Amato*, 469 F.3d at 550 (citation omitted).

These factors are all met here. First, Mid-West has made a showing of irreparable injury—something that "ordinarily follows" when, as discussed, a "likelihood of confusion or

possible risk to reputation appears" from the infringement. *See Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1056 (6th Cir. 1999); *see also Lucky's Detroit, LLC v. Double L, Inc.*, 533 F. App'x 553, 555 (6th Cir. 2013) ("In trademark infringement cases, a likelihood of confusion or possible risk to the requesting party's reputation satisfies the irreparable injury requirement."). Second, in balancing the relative hardships, Acugauge faces no hardship from refraining from its willful violations of the Lanham Act, but Mid-West would continue to suffer hardship from any continued violations, including damage to its reputation and loss of sales. *See D'Amato*, 469 F.3d at 550. Third, because of the potential of future harm to Mid-West if Acugauge continues to violate Mid-West's rights to the 845 marks, there is no adequate remedy at law. *See id*. Finally, an injunction would further the public interest—"prevent[ing] consumers from being misled" by Acugauge. *See id*.

With respect to Mid-West's request for the injunction to order Acugauge to "return" all of its infringing materials to Mid-West for destruction, Mid-West has cited no authority suggesting that such relief is warranted, and commonly, other courts have simply ordered infringing materials to be destroyed, not returned directly to the plaintiff. *See Great Lakes Transp. Holding LLC v. Metro 2 Airport Sedan Serv.*, No. 14-13594, 2015 WL 871111, at *3 (E.D. Mich. Feb. 27, 2015); *Goulas v. Maxmo, Inc.*, No. 14-10993, 2014 WL 2515217, at *6 (E.D. Mich. June 4, 2014); *Am. Auto. Ass'n v. Dickerson*, 995 F. Supp. 2d 753, 757 (E.D. Mich. 2014).

## IV.

As a final issue, Mid-West asks the Court to award attorney's fees. Under the Lanham Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). "Although this provision does not define 'exceptional,' [the Sixth

13

Circuit] ha[s] held that a case is not exceptional where the trademark infringement was not malicious, willful, fraudulent, or deliberate." *Goodfellow*, 717 F.3d at 505 (internal quotation marks and citations omitted). As described in the Complaint, Acugauge's Lanham Act violations have been willful and deliberate. Acugauge has copied marketing material directly from Mid-West, and even after several warnings by Mid-West, has continued to use Mid-West's marks without permission. And Acugauge has provided no explanation for its conduct. Thus, the Court finds that Mid-West is entitled to attorney's fees. Mid-West should submit to the Court a supplemental brief identifying and documenting its time spent on its Lanham Act claims. *See U.S. Structures, Inc. v. J.P. Structures, Inc.,* 130 F.3d 1185, 1193 (6th Cir. 1997). ("[U]nder 15 U.S.C. § 1117(a), attorneys' fees are recoverable only for work performed in connection with claims filed under the Lanham Act.").

## V.

For the reasons discussed, Mid-West's Motion for Default Judgment (R. 9) is GRANTED to the extent that the motion and the requested injunctive relief applies to Counts I and II. Counts III, IV, and V are DISMISSED WITHOUT PREJUDICE. Mid-West has until March 8, 2017 to submit a supplemental brief on its request for attorneys' fees. A separate default judgment will issue for the requested injunctive relief.

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
Dated: February 27, 2017          U.S. DISTRICT JUDGE

14

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 27, 2017.

s/Keisha Jackson     
Case Manager
